Wyatt James Thurston

    v.                                                      Civil No. 17-cv-660-LM
                                                                Opinion No. 2019 DNH 019
Commissioner, Social Security
Administration

**O R D E R**

Wyatt James Thurston seeks judicial review of the decision of the Acting Commissioner of the Social Security Administration, denying his application for disability insurance benefits. Thurston moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm. For the reasons discussed below, the court grants the Acting Commissioner's motion to affirm and denies Thurston's motion to reverse.

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the [Administrative Law Judge] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to

the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, id. § 404.1545(a)(1), and his past relevant work, id. § 404.1520(a)(4)(iv). If the claimant can perform his past

relevant work, the ALJ will find that the claimant is not disabled. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ proceeds to Step Five, where the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment. See id. § 404.1520(a)(4)(v).

## BACKGROUND

A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 12). The court provides a brief summary of the case here.

On October 31, 2014, Thurston filed an application for disability insurance benefits, alleging a disability onset date of September 15, 2013, when he was 24 years old. He alleged a disability due to bipolar disorder, social anxiety disorder, and attention-deficit/hyperactivity disorder.

After Thurston's claim was denied at the initial level, he requested a hearing in front of an ALJ. On May 10, 2016, the ALJ held a hearing, during which Thurston testified and was represented by an attorney.

On August 3, 2016, the ALJ issued an unfavorable decision. He found that Thurston had the following severe impairments: affective disorder, attention deficit hyperactivity disorder,

and anxiety.  He further found that Thurston had the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations, including only occasional interaction with the public and only simple, routine tasks.

In assessing Thurston's residual functional capacity, the ALJ gave some weight to the opinion of Dr. Michael Schneider, the non-examining state agency psychologist.  The ALJ ultimately adopted a more restrictive RFC assessment than was contained in Dr. Schneider's opinion.

Ralph E. Richardson, an impartial vocational expert, testified at the hearing.  In response to hypotheticals posed by the ALJ, Richardson testified that a person with Thurston's RFC could perform jobs that exist in significant numbers in the national economy.  Based on Richardson's testimony, the ALJ found at Step Five that Thurston was not disabled.

On September 29, 2017, the Appeals Council denied Thurston's request for review, making the ALJ's decision the Acting Commissioner's final decision.  This action followed.

## DISCUSSION

Thurston contends broadly that the ALJ erred in his residual functional capacity assessment.  Viewed generously,

Thurston argues that the ALJ erred in his evaluation of the medical opinion evidence.  Specifically, he contends that the ALJ erred in giving little weight to the opinions of Dr. James Kates, Thurston's treating psychiatrist, and Dr. Girish Joshi. He also criticizes the ALJ for purportedly ignoring the opinion of his mental health counselor, Charles Farrell.[1]

"An ALJ is required to consider opinions along with all other relevant evidence in a claimant's record."  Ledoux v. Acting Comm'r, Social Sec. Admin., No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018).  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  § 404.1527(a)(1).

---

[1] Thurston states generally that the ALJ's residual functional capacity assessment is not supported by substantial evidence. He also briefly discusses the ALJ's evaluation of Dr. Schneider's opinion, but he does not appear to challenge the weight the ALJ afforded to that opinion.  To the extent Thurston intended to challenge the weight the ALJ gave to Dr. Schneider's opinion or the ALJ's RFC assessment other than to the ALJ's evaluation of Farrell's and Drs. Kates's and Joshi's opinions, those arguments are not sufficiently developed to be addressed. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . .").

5

The ALJ analyzes the opinions of state agency consultants, treating sources, and examining sources under the same rubric. See Ledoux, 2018 WL 2932732, at *4; 20 C.F.R. § 404.1527(c). The ALJ must consider "the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, consistency with the medical opinions of other physicians," along with the doctor's expertise in the area and any other relevant factors. Johnson v. Berryhill, No. 16-cv-375-PB, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017).

A treating medical source's opinion about the claimant's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(c)(2). An ALJ must give "good reasons" for the weight given to a treating source's medical opinion. Id. "Those reasons must offer a rationale that could be accepted by a reasonable mind." Dimambro v. US Soc. Sec. Admin., Acting Comm'r, No. 16-cv-486-PB, 2018 WL 301090, at *10 (D.N.H. Jan. 5, 2018). If the ALJ satisfies that standard, the court will uphold the decision to discount a treating source's opinion. Id.

I.   Dr. Kates

Thurston argues that the ALJ erred in affording little weight to the opinions of his treating psychiatrist, Dr. James Kates.  To the extent he raises a specific challenge to the weight the ALJ gave to Dr. Kates's opinions, Thurston notes that the ALJ discounted certain of Dr. Kates's opinions because they were inconsistent with his own treatment notes.  See Admin. Rec. at 30 (giving Dr. Kates's March 2015 opinion little weight, in part, because it was inconsistent with his office notes that documented generally normal mental status exams); id. (giving Dr. Kates's April 2016 opinion little weight, in part, because it was inconsistent with his treatment notes stating that Thurston's mental condition was "minimal" to "moderate" in severity).  Thurston contends that the ALJ's reasoning was faulty because "[w]hen presented with the ALJ's interpretation of his notes Dr. Kates authored the letter present in the record at AR 19-20 which details the Plaintiff's specific issues in pursuing employment."  Doc. no. 7-1 at 4.

Thurston's argument based on Dr. Kates's letter is without merit.  First, Dr. Kates wrote the letter on October 7, 2016.  Thus, this evidence was not a part of the record when the ALJ issued his decision on August 3, 2016 and "this court cannot

7

consider additional evidence submitted only to the Appeals Council." Cassidy v. Berryhill, No. 17-CV-451-SM, 2018 WL 1157761, at *5 (D.N.H. Mar. 5, 2018).[2]

Even if the court could consider Dr. Kates's October 7, 2016 letter, it would not change the outcome of the case. The letter states that Dr. Kates believes Thurston should be considered disabled "at this point." Admin. Rec. at 19. The letter does not address the ALJ's reasons for affording Dr. Kates's opinions little weight, discuss Thurston's functional capacity, or provide insight into Thurston's impairments during the relevant period. See Whitehead v. Astrue, No. CIV.A. 11-11292-RWZ, 2012 WL 5921045, at *6 (D. Mass. Nov. 26, 2012) (affording little weight to medical opinions because "the opinions at issue are worded in the present tense without any retrospective component and thus purport to assess plaintiff's functioning at the time they were rendered"); Pierce v. Astrue, No. 10-cv-242-JAW, 2011 WL 2678919 at *5 (D. Me. Jul. 7, 2011) (holding that medical opinion phrased in present tense reflected

---

[2] The Appeals Council determined that the letter did not change the outcome of the decision and Thurston does not challenge the Appeals Council's conclusion. See, e.g., Natsis v. Berryhill, No. 16-CV-063-LM, 2017 WL 1032258, at *3 (D.N.H. Mar. 16, 2017) (declining to address new evidence submitted to the Appeals Council because plaintiff's "motion challenges the ALJ's determination, not the Appeals Council's decision").

8

claimant's then-current condition, not his condition prior to loss of insured status).

In addition, the determination of disability is reserved to the Acting Commissioner. § 404.1527(d)(1). For that reason, opinions about disability from medical providers are not entitled to weight. Gregory T. v. Berryhill, No. 1:17-CV-00445-LEW, 2018 WL 6012222, at *7 (D. Me. Nov. 16, 2018); Boardway v. Berryhill, No. 3:17-CV-30069-KAR, 2018 WL 4323823, at *10 (D. Mass. Sept. 10, 2018).

Therefore, Thurston's argument as to Dr. Kates's opinions is unpersuasive.

II. Dr. Joshi

Thurston criticizes the ALJ for giving little weight to the opinion of Dr. Girish Joshi because the ALJ purportedly "could not determine Dr. Joshi's treatment relationship to the Plaintiff." Doc. no. 7-1 at 4. Thurston appears to suggest that Dr. Joshi's treating relationship with him was apparent from the administrative record. He cites Dr. Joshi's notes, showing that he examined Thurston on several occasions.

Thurston mischaracterizes the ALJ's reasons for giving Dr. Joshi's opinion little weight. The ALJ stated that the record evidence "does not contain any indication that [Dr. Joshi] ever

9

examined or treated claimant during the relevant period."
Admin. Rec. at 31 (emphasis added). As the Acting Commissioner notes, Dr. Joshi's treatment notes begin in April 2015, while Thurston's last insured date was December 31, 2013. Therefore, the ALJ's statement was not erroneous. See Sullivan v. Colvin, No. 14-CV-06-JL, 2015 WL 1097404, at *1 (D.N.H. Mar. 11, 2015) (A "'claimant is not entitled to [DIB] unless he can demonstrate that his disability existed prior to the expiration of his insured status,' i.e., his date last insured." (quoting Cruz Rivera v. Sec'y of HHS, 818 F.2d 96, 97 (1st Cir. 1986))).

Further, the ALJ gave additional reasons for giving Dr. Joshi's opinion little weight, including that the record evidence does not show Dr. Joshi's specialization or focus of practice and that his opinion is inconsistent with other medical evidence in the record. Thurston has not shown any error in the ALJ's analysis of Dr. Joshi's opinion.

III. Charles Farrell

Thurston asserts that the ALJ erroneously failed to address the opinion of his Licensed Mental Health Counselor, Charles Farrell. But despite this claim of error, Thurston fails to cite or discuss any opinion by Farrell that the ALJ failed to consider. The court's review of Farrell's notes in the

Administrative Record does not reveal an opinion as to Thurston's functional capacity.[3]  Therefore, the ALJ committed no error.

For these reasons, the court denies Thurston's motion to reverse and grants the Acting Commissioner's motion to affirm.

**CONCLUSION**

For the foregoing reasons, the plaintiff's motion to reverse (doc. no. 7) is denied, and the Acting Commissioner's motion to affirm (doc. no. 10) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 30, 2019

cc:  Counsel of Record

---

[3] The court notes for sake of completeness that, as other courts have noted, Farrell is not an acceptable medical source and, therefore, cannot offer a medical opinion. See, e.g., Cummings v. Astrue, No. CIV. 09-391-P-H, 2010 WL 2076021, at *5 (D. Me. May 20, 2010) ("The plaintiff acknowledges that Farrell, a counselor, is not an 'acceptable medical source' . . . ."); see also § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources . . . .").

11